# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRISTOPHER BATISTE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-9077** |
| **SUPERIOR ENERGY SERVICES, LLC** | **SECTION: "S" (2)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Christopher Batiste, a Jones Act seaman, has filed suit against Superior Energy Services, L.L.C. seeking damages pursuant to the Jones Act and the General Maritime law. Jurisdiction is based on 28 U.S.C. § 1333. The plaintiff has designated this matter as an admiralty and maritime claim within the meaning of Fed. R. Civ. P. 9(h), and proceeded to trial before the undersigned judge. Batiste is seeking damages for injuries that he allegedly sustained in two accidents while employed by Superior.

## BACKGROUND

On November 22, 2006, the plaintiff was employed as a deckhand aboard the M/V FORTITUDE, a vessel owned and operated by Superior. On that date, plaintiff was performing his assigned duties, changing a hose on a water pump aboard the vessel. The plaintiff testified that the captain of the vessel asked him and another deckhand to do the job as it was a two-man job, but because the other deckhand was cooking, plaintiff was sent out to do the job alone.

The pump, which plaintiff estimated weighed fifty pounds and defendant estimated weighed twenty-five pounds, was in the water, over the side of the railing of the vessel. Plaintiff utilized a crankshaft to pull the pump as far as possible to the side of the vessel. In order to bring

the pump onto the deck, plaintiff had to bend over the side railing in an "awkward position," and pull the pump over the railing. While doing so, plaintiff felt a pop in his back.

The plaintiff initially believed this was a job he could do by himself, but realized afterwards that he could not. Plaintiff acknowledged that he never asked any of the other crewmembers to help him perform this job, and admitted that the crew would have assisted him if he had requested their help.

The plaintiff reported the accident to the captain and was sent by defendant to Acadiana Center for Orthopaedic and Occupational medicine, where he was examined by Dr. Amanda Phillip-Savoy, who prescribed Tylenol and Ecotrin. One week later, on November 29, 2006, he was examined by Dr. Gregory Gidman, an orthopaedist in the same group. Dr. Gidman diagnosed the plaintiff with a lumbosacral strain and released him to full duty and instructed him to pursue a home therapy program including soaks, rubdowns, heat, and a proper sleeping position. Although the plaintiff returned to work on his next hitch, he reported that his back continued to hurt, especially on bending.

On March 3, 2007, plaintiff was again working aboard the M/V FORTITUDE. On that date, the plaintiff was employed as a deckhand but was assisting in a wireline operation on a wellhead serviced by the M/V FORTITUDE.

The M/V FORTITUDE was jacked up next to a wellhead. A gangway was positioned between the two structures so that the crew could travel from the vessel to the wellhead. The plaintiff was sent to the wellhead to hook up a hose to the manifold on a Christmas tree, which was approximately six feet high, with metal bars protruding from each side. Plaintiff testified

2

that the bars were slippery from discharges of fumes and gases from the wellhead. Plaintiff climbed up the bars on the Christmas tree, and while tightening the hose, the wrench plaintiff was using[1] slipped and the plaintiff fell about three to four feet onto nearby grating, and injured his lower back.

The defendant has asserted that plaintiff could have used a six foot step ladder on board to access the wellhead. Plaintiff did not believe that the area he was working on was large enough to fully open the ladder, although he acknowledged that it would have been safer to have used the ladder, even if it was closed. The Superior Safety Manual[2] requires a stepladder to be used for "overhead reaching" Batiste admitted that he did not follow this safety rule at the time of his accident.

The plaintiff initially saw his family doctor and then Dr. William Donovan, an orthopaedic surgeon in Houston, Texas. Dr. Donovan performed an MRI of the plaintiff's lumbar spine, which revealed two bulging discs. Dr. Donovan prescribed steroid injections to his lower back, which helped the plaintiff's pain "for a couple of days."

Batiste was referred by his attorney to Dr. John Cobb, an orthopaedic surgeon in Lafayette, Louisiana. Dr. Cobb treated Mr. Batiste from August 15, 2007 though September 10, 2007. Dr. Cobb obtained an MRI of his cervical spine which was negative.[3] On September 10,

---

[1] Plaintiff testified that the wrench was rusty, and that he had sprayed it with WD 40 to "help it work."

[2] The plaintiff had attended a three or four day job-orientation and safety-training program when he was initially hired by Superior. He was given a Safety Manual. He reported that he read and understood the "majority" of the Safety Manual.

[3] Plaintiff denies ever complaining to Dr. Cobb about pain in his cervical spine, and questions why that MRI was ordered.

2007, Dr. Cobb discharged Mr. Batiste from his care and released him to light duty and recommended a vocational rehabilitation consultant to direct him into a lighter job.

In September, 2007, the plaintiff accepted a position with Louisiana Sugarcane Cooperative, Inc. in St. Martinville, Louisiana. In his employment application, the plaintiff denied that he had ever had any pre-existing disease, condition or impairment or worker's compensation claims. He further denied that he had ever "received treatment for his back, neck, knees or legs from a doctor, chiropractor, therapist or other health provider"; or that he "ever had an injury which required him to miss time from work". Plaintiff acknowledges this inconsistency, but asserts this was necessary for him to obtain employment.

After leaving Louisiana Sugarcane, the plaintiff went to work for Levert-St.John. He worked for this company from November, 2007 through April, 2008 earning $7 per hour. Plaintiff testified that he was unable to continue working at the sugar mills due to the pain in his lower back.[4]

On April 15, 2008, Dr. Cobb obtained an MRI of plaintiff's cervical spine, which was normal, and on April 28, 2008, Dr. Cobb released plaintiff to "regular duty." Because he could not pinpoint what was causing plaintiff's continued complaints of pain, Dr. Cobb referred plaintiff to Dr. Stephen Staires, a pain management specialist.

On July 21, 2008, the plaintiff submitted to an independent medical examination by Dr. Robert Steiner, an orthopaedic surgeon. Dr. Steiner found that the plaintiff was neurologically intact, his diagnostic tests were normal, and opined that plaintiff had no objective findings to

---

[4]According to his income tax returns, Batiste earned $2,894 in 2002; $3,688 in 2003; $4,988 in 2004; $9,295 in 2005; $9,537 in 2006; and $6,723 in 2007.

substantiate his subjective complaints of pain. He concluded that the plaintiff had recovered from the injuries he allegedly sustained in the accident. Dr. Steiner opined that the plaintiff could return to work with no restrictions on his activities, confirming the opinion of Dr. Cobb.

DISCUSSION

1. Negligence and Unseaworthiness

Jones Act negligence and unseaworthiness claims are separate causes of actions and are treated as such. See Brunner v. Maritime Overseas Corp., 779 F.2d 296,298 (5th Cir. 1986).

Under the Jones Act, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury. See Gautreaux v. Sculock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997)(en banc). The employer is held to a standard of ordinary prudence under the circumstances. Id. "A seaman is entitled to recovery under the Jones Act, therefore, if his employer's negligence is the cause, in whole or in part, of his injury." Id. The terms "slightest" and "featherweight" have been used to describe the reduced standard of causation between the employer's negligence and the employee's injury. Id. at 335; Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir. 1988).

A seaman is obligated under the Jones Act "to act with ordinary prudence under the circumstances" to protect himself from injury. Id. at 339. "The circumstances of a seaman's employment include not only his reliance on his employer to provide a safe work environment but also his own experience, training, or education. The reasonable person standard, therefore,

[in] a Jones Act negligence action becomes one of the reasonable seaman in like circumstances." Id.

"[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence." Usner v. Luckenback Overseas Corp., 91 S.Ct. 514,517(1971). "Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be 'accident free.'" Simeon v. T. Smith & son, Inc., 852 F.2d 142, 1432-33 (5th Cir. 1988). "For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." Jackson v. OMI Corp., 245 F.3d 525,527 (5th Cir. 2001). "[A]n unsafe method of work may also render a vessel unseaworthy." Phillips v. Western Co. of North America, 953 F.2d 923,928 (5th Cir. 1992). The duty to provide a seaworthy vessel is absolute and completely independent of the duty under the Jones act to exercise reasonable care; therefore, a showing of negligence is not required. See Phillips v. Western Co. of North America, 953 F.2d 923,928 (5th Cir. 1992).

Plaintiff contends the defendant was negligent and the vessel unseaworthy. As to the first accident, plaintiff contends that the order to retrieve the pump "created a hazardous condition in that it was impossible for the plaintiff -even with assistance of another crewmember- to safely lift the pump over the railing in a proper manner." Defendant contends the accident was caused by plaintiff's failure to request assistance in lifting the pump.

Plaintiff alleges the pump weighed about fifty pounds, while defendant alleges it weighed about 25 pounds. Neither party submitted any evidence of the actual weight. However, the safety manual limits manual lifting to 50 pounds. The court finds it was not unsafe for plaintiff

to be requested to lift the pump alone, and that there is no liability, either for negligence or unseaworthiness for the first accident.

As to the second accident, plaintiff contends the defendant was negligent in allowing the slippery substance to remain on the bars of the Christmas tree. Defendant counters that plaintiff was at fault in electing to climb on the bars, and should have used the six-foot stepladder which plaintiff acknowledged was at the job site. The safety manual is instructive on this point. Section 6.13 provides: "Always use a stepladder for overhead reaching." The court finds the plaintiff should have used the stepladder to accomplish the connecting of the hose to the manifold, and his failure to do so constitutes a failure "to act with ordinary prudence under the circumstances" to protect himself from injury. Plaintiff was the sole cause of his second accident. Defendant was not negligent, nor was the vessel unseaworthy.

2. Maintenance and cure

Although plaintiff is not entitled to damages based on negligence or unseaworthiness, he is entitled to maintenance and cure because he was injured in his service to the vessel, M/V FORTITUDE.

"Maintenance and cure is an ancient duty imposed upon a shipowner to provide for a seaman who becomes ill or injured during is service to the ship." Silmon v. Can Do. II, Inc., 89 F.3d 240, 242 (5th Cir. 1996). The duty is implied in maritime employment contracts and is not premised on the fault or negligence of the shipowner. Id. "The right terminates only when maximum cure has been obtained." Bertram v. Freeport McMoran, Inc., 35 Fed 1008, 1012 (5th Cir. 1994) (internal quotation and citation omitted). "Maximum cure is achieved when it is

probable that further treatment will result in no betterment of the seaman's condition." Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 95 (5th Cir. 1985). It is proper to declare maximum cure if the condition is incurable or if further treatment will only relieve pain and suffering. See Pelotto v. L & N Towing Co., 604 F2d 396, 404 (5th Cir. 1979)

Dr. Gidman, who examined plaintiff on November 29, 2006, one week following the first injury, released him to full duty. Because of his work schedule, plaintiff missed no work, and is not entitled to maintenance for the first injury. As to the first accident, the court determines plaintiff reached maximum medical improvement November 29, 2006. Superior owes cure for all medical expenses related to treatment though that date.

As to the second accident, plaintiff's treating physician, Dr. Cobb, released plaintiff to regular duty on April 28, 2008. The court determines plaintiff is entitled to maintenance at the stipulated rate of $30 per day from March 3, 2007, through April 28, 2008.[5] He is also entitled to cure through that date.

## CONCLUSION

This court finds that plaintiff was injured on November 22, 2006 and March 3, 2009, aboard the M/V FORTITUDE. Defendant was not negligent and did not cause the accidents, and the vessel was not unseaworthy. As a seaman, plaintiff is entitled to cure from the time of his first injury on November 22, 2006 to November 29, 2006, when he reached maximum medical

---

[5] Defendant is presently incarcerated. It is stipulated that he may not receive maintenance during incarceration. The dates for which he is being awarded maintenance do not overlap the dates of his incarceration. Therefore, no adjustment is necessary.

improvement. As to the second injury, plaintiff is entitled to maintenance and cure from March 3, 2007 to April 28, 2008, subject to a credit for any sums paid by defendant during that time.

New Orleans, Louisiana this 28th day of May, 2009.

_____
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE